# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CARMATH, INC., )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-094-KEW
)
FIRSTBANK; and )
J. DAVID BURRAGE, )
)
       Defendants. )

## **OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket Entry #42). On March 6, 2011, Defendant David J. Burrage, President of FirstBank ("Burrage"), authored a letter which read:

> To Whom It May Concern:
>
> Jim Berry, President of Berry Energy Services, Inc. has been a customer of FirstBank since 2009, prior to that time I personally loaned Mr. Berry over $550,000. During the 2 years that Mr. Berry did business with me personally he paid as agreed. Currently, Mr. Berry is the guarantor or maker on loans totaling $589,000 at FirstBank. All loans have paid as agreed. I have also followed Mr. Berry's progress in the energy business and have been impressed with his success.
>
> Should you need anything further please don't hesitate to call me.

At the time that these representations were made by Burrage: (1) Berry Energy Services, Inc. was not a customer of FirstBank and has never been a customer of the bank; (2) Jim Berry was a customer of FirstBank and had successfully paid off two loans and maintained

two active loans with the bank; and (3) no negative credit reporting of Jim Berry had occurred.

On October 25, 2011, Berry Energy Services, Inc. completed a document entitled "Credit Application" for TransMatrix, Inc. ("TransMatrix"), the broker providing credit verification services to Plaintiff CarMath, Inc. ("CarMath") on the lease agreement. Among the information provided on the form was the identification of five credit references: FirstBank with Burrage as the contact, Red Flint Sand & Stone, Flash Trucking, American Express Trucking, and Union Pacific Railroad. The application was signed by Jim Berry. TransMatrix then sent representatives of American Express Trucking, Flash Trucking, and Red Flint Sand & Stone individual letters which indicated that it was "Requesting Credit Information on Berry Energy Services, Inc." American Express Trucking rated Berry Energy Services, Inc.'s account with it as "excellent" noting "good customer, pays on time!" Flash Trucking also rated the account with the company as "excellent." Red Flint Sand & Stone rated the account "good", stating the company "always pays within 1-2 days of net 15." The Burrage letter was sent by e-mail by Nicholas Berry, an employee of Berry Energy Services, Inc., to TransMatrix on October 25, 2011. After receiving the Burrage letter, neither TransMatrix nor CarMath attempted to contact Burrage to verify that the information contained in the letter

pertained to Berry Energy Services, Inc. or whether the information had changed in the seven months since the letter was written.

On November 3, 2011, CarMath entered into a five year lease agreement with Berry Energy. CarMath leased Berry Energy 22 rail cars for use in the transportation of frac sand. Jim Berry was not a party to the lease agreement and did not provide a guaranty for the obligation.

Berry Energy subsequently defaulted on the lease obligation. On April 16, 2015, a default judgment was entered by the Circuit Court, Second Judicial Circuit, State of South Dakota, County of Minnehaha.

On March 11, 2016, CarMath initiated this action alleging claims against Defendants arising from the letter proffered by Burrage for (1) fraudulent misrepresentation; (2) fraud in the inducement; and (3) negligent misrepresentation.

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d 567, 569–70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a

matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial.  *See* 1-800-Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1242 (10th Cir. 2013)(citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  Anderson, 477 U.S. at 248.  The facts must be considered in the light most favorable to the nonmoving party.  Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013)(citations omitted).

The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). Only admissible evidence may be considered when ruling on a motion for summary judgment.  Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1314 (10th Cir. 2005)(citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474

4

(10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. <u>Murray v. City of Sapulpa</u>, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." <u>Id</u>.

In order to prevail on a claim for fraudulent misrepresentation, CarMath must demonstrate that Defendants (1) made a material misrepresentation; (2) it was false; (3) made the representation knowing it was false or in reckless disregard of the truth; (4) made it with the intention that it should be acted upon by CarMath; (5) CarMath acted in reliance upon it; and (6) CarMath thereby suffered injury. <u>Sturgeon v. Retherford Pubs., Inc.</u>, 987 P.2d 1218, 1228 (Okla.Civ.App. 1999). In analyzing CarMath's claim, this Court must necessarily examine the content of Burrage's letter and consider that which the letter stated not what it might have stated.

The subject matter of the content of the letter was clearly Jim Berry. Despite attaching a title to Jim Berry's name, Burrage only references his dealings both personally and through FirstBank with Jim Berry individually. Moreover, no evidence has been presented in connection with the Motion which would indicate Burrage or FirstBank had ever had a credit relationship with Berry Energy Services, Inc. such that a credit history and an opinion on

5

credit worthiness for that entity could be provided.

"The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." *See* Turley v. State Farm Mut. Auto. Ins. Co., 944 F.2d 669, 672 (10th Cir. 1991); Long v. Insurance Co. of N. Am., 670 F.2d 930, 934 (10th Cir. 1982). However, materiality "can be decided as a matter of law if reasonable minds could not differ on the question." Long, 670 F.2d at 934; see also Claborn v. Washington Nat'l Ins. Co., 910 P.2d 1046, 1049 (Okla. 1996).[1] In this case, reasonable minds could not differ that Burrage's and FirstBank's experience with Jim Berry's credit was immaterial to CarMath's credit decision to enter into lease agreements with Berry Energy Services, Inc. Nothing in the recitation of Burrage's experience with lending would lead to the conclusion that the information and opinions provided applied to Berry Energy Services, Inc. - the sole signatory to the lease agreement with CarMath. As a result, this Court cannot conclude that the Burrage letter pertained to any fact material to CarMath's credit decision.

CarMath directs to certain alleged indicia in the letter which would make its content material to CarMath's decision. CarMath

---

[1] This Court acknowledges that this line of cases involve claims for insurance fraud rather than general claims of fraudulent misrepresentation or specific claims of fraudulent misrepresentation by a creditor in providing information of credit worthiness. The concept of materiality, however, should not differ greatly between the factual circumstances of the alleged fraud.

references the request for credit information sent by TransMatrix which states "Jim Berry, President of Berry Energy Service, Inc. supplied your name as a credit reference" then requests credit information. However, the evidence indicates this letter was sent to American Express Trucking, Flash Trucking, Red Flint Sand & Stone, and Union Pacific Railroad - not Burrage or FirstBank. The Burrage letter was instead provided directly by Nicholas Berry not Burrage or FirstBank.

CarMath also references the testimony of Burrage wherein he indicated that the letter would be used by Jim Berry "in whatever he was doing, whether it was Berry Energy Services or Jim Berry or Berry whatever he was doing." While Burrage may not have expected Jim Berry to be limited in his usage of the letter, the fact remains that its content only pertained to the credit history of Jim Berry personally as that was the only information and experience Burrage possessed at the time of the construction and execution of the letter.

The second element of the fraudulent misrepresentation claim requires a finding of falsity of the information provided. This Court first rejects the notion that a creditor, including a banking institution, has a duty to relate information concerning the credit worthiness of a party that does not pertain to the dealings with the institution. Specifically, CarMath contends Burrage was aware

7

that Jim Berry had lost his law license, that he had experienced credit problems prior to his dealings with Burrage and FirstBank, that Burrage personally purchased Jim Berry's home from foreclosure to assist him, and Jim Berry was late in making payments to FirstBank.  Again, none of these facts pertained to Berry Energy Service, Inc.  Additionally, nothing in the case authority requires that matters completely outside of the credit relationship between Jim Berry and Burrage and FirstBank are required to be reported in an opinion on credit.  To its illogical end, a creditor would be required under this theory to report all unsupported rumors and innuendo which might have a remote relevance to a customer's credit in any request for information.

On those matters which do relate directly to Jim Berry's credit, no falsity in the precise statements made in the letter can be found.  Burrage stated in the letter that he loaned Berry personally $550,000.00, which represented the purchase of Jim Berry's home.  The late payments on loans to FirstBank were assessed by Burrage as he did all of his customers - whether the payments were sufficiently late to warrant credit reporting.  By all accounts, none of Jim Berry's payments were sufficiently late that he was considered in default by FirstBank.  Indeed, Burrage's letter specifically stated that Jim Berry "paid as agreed" which did not imply or invoke the technical term of "default" as CarMath

8

suggests.

The third element requires knowledge of falsity or reckless disregard for the truth. Since the information provided did not relate to Berry Energy Services, Inc. and was not materially false, this element is not satisfied.

The fourth element requires an intent that the information provided be acted upon by CarMath. Burrage's testimony would indicate that he may not have specifically intended CarMath or TransMatrix to rely upon the information provided but to the extent they used it to provide credit to Jim Berry, individually, he had not objection to them doing so.

The fifth element states that CarMath must have relied upon the information. CarMath states it relied upon the information provided by TransMatrix, which included Burrage's letter. Curiously, CarMath offers testimony from TransMatrix employee Chris Huege concerning the greater weight given to Burrage's and FirstBank's credit opinion despite the fact that TransMatrix does not make credit decisions but rather only gathers the credit information and passes it on to CarMath which is then responsible for further inquiry into the creditworthiness of the entity to which credit is considered. This Court rejects the evidence provided by Mr. Huege concerning his opinion on the letter, its age, and its weight on this basis.

9

Any reliance by CarMath must be reasonable. Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1164-65 (10th Cir. 2004)("Oklahoma law requires . . . 'reasonable reliance' on misrepresentations, and . . . 'an action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence.' ") (quoting Silver v. Slusher, 770 P.2d 878, 882 n. 8 (Okla. 1988)); Eckert v. Flair Agency, Inc., 909 P.2d 1201, 1206 (Okla.Civ.App. 1995). CarMath's stated reliance upon the Burrage letter which clearly did not pertain to the credit worthiness of Berry Energy Services, Inc. was patently not reasonable given its content and the failure to verify any discrepancies or questions it perceived with Burrage before entering into the lease agreement.

In short, CarMath has failed to sustain its burden on the claim for fraudulent misrepresentation. CarMath states a separate claim for fraud in the inducement, which is defined under Oklahoma law as a

> misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken.

Harkrider v. Posey, 24 P.3d 821, 827 (Okla. 2000).

In this case, the fraudulent inducement claim is inextricably intertwined with the fraudulent misrepresentation claim since they

10

arise from the same representations by Burrage and FirstBank. Since CarMath failed in its evidence to demonstrate the necessary elements of fraudulent misrepresentation, it also has failed to prove Burrage's and FirstBank's actions induced it to enter into the agreement with Berry Energy Services, Inc.

CarMath also asserts a claim for negligent misrepresentation. The cause of action specific to the representations of creditors was espoused in the case of <u>MSA Tubular Products, Inc. v. First Bank and Trust Co., Yale, Okla.</u>, 869 F.2d 1422 (10th Cir. 1989). The Tenth Circuit recognized that

> Where a bank, through one of its duly authorized officers or agents, undertakes to supply credit information, arguably gratuitously, the bank and its officers are bound to use the skill and expertise which they hold themselves out to the public as possessing. There is ordinarily no reason why factual information given by the bank should not be accurate. When a bank officer makes representations or omissions of material facts false at the time, and where that officer has not exercised reasonable care and diligence to see that the information dispensed is accurate, the bank may incur a liability.

<u>Id</u>. at 424.

The Court provided the necessary elements for the claim which must be proved by a preponderance of the evidence - (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that in responding to the credit inquiry the bank officer failed to exercise that degree of diligence and expertise the public is

entitled to expect of reasonably competent bank officers; (4) that it reasonably relied upon the bank's misrepresentation or omission; and (5) that it suffered damages as a direct and proximate result of such reasonable reliance.  Id.

Without reiterating the reasoning and findings already made in connection with the fraud claims, the evidence is lacking of a misrepresentation, that the content of the letter was material since it only referenced the credit performance of a non-party to the lease, and CarMath's reliance upon the letter was not reasonable under the circumstances.  As far as the due diligence element, Burrage testified that he reviewed Jim Berry's credit record with FirstBank prior to providing the letter and, under the terms of the agreements and practices of FirstBank, Jim Berry "paid as agreed" as the letter specifically states.  Burrage was not "responding to a credit inquiry" as the Tenth Circuit suggests but was providing a broad-based "to whom it may concern" letter which, at best, should have prompted further inquiry by CarMath.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Docket Entry #42) is hereby **GRANTED**.  Judgment will be entered for Defendant accordingly.

IT IS SO ORDERED this 3rd day of August, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE